FILED
CLERK, U.S. DISTRICT COURT

1/27/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RYO _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>PHILIP JESUS SOTO JR.,<br>   aka "Tee,"<br>   aka "Pee,"<br>   aka "El Jefe,"<br>JOSEPH DANIEL MEDINA,<br>   aka "Listo,"<br>JOEY LOPEZ, and<br>PRESTON O'NEIL COUSINS,<br><br>            Defendants. | CR  2:26-cr-00037-JLS<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy to Engage in the Business of Dealing Firearms Without a License; 21 U.S.C. § 846: Conspiracy to Distribute Methamphetamine; 21 U.S.C. § 841(a)(1),(b)(1)(A)(viii): Distribution of Methamphetamine; 18 U.S.C. § 922(a)(1)(A): Engaging in the Business of Dealing in Firearms Without a License; 26 U.S.C. § 5861(d), (i): Possession of an Unregistered / Un-Serialized Firearm; 18 U.S.C. § 922(g)(1): Felon in Possession of Ammunition; 18 U.S.C. §§ 924(d)(1), 981; 21 U.S.C. § 853; 26 U.S.C. § 5872, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATION

At times relevant to this Indictment, defendants PHILIP JESUS SOTO JR., also known as ("aka") "Tee," "Pee," and "El Jefe," JOSEPH ANTHONY MEDINA, aka "Listo," JOEY LOPEZ, and PRESTON O'NEIL COUSINS did not have a federal firearms license issued by the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, and thus were not licensed to import, manufacture, or deal in firearms.

B.   OBJECT OF THE CONSPIRACY

Beginning on an unknown date, but no later than on or about February 3, 2024, and continuing until at least on or about January 10, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants SOTO, MEDINA, LOPEZ, and COUSINS conspired with each other and with others known and unknown to the Grand Jury to engage in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A).

C.   MANNER AND MEANS OF THE CONSPIRACY

The object of the conspiracy was to be accomplished, in substance, as follows:

1.   Defendant SOTO would negotiate with firearms customers to sell firearms and would arrange for defendants MEDINA, LOPEZ, and COUSINS to pick up and deliver the firearms to the customers.

2.   Defendants MEDINA, LOPEZ, and COUSINS would meet with firearms customers at a pre-arranged meeting location to deliver the firearms and to collect the customer's cash.

D.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants SOTO, MEDINA, LOPEZ, and COUSINS, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

**February 8, 2024: SOTO and MEDINA Sell Three Firearms and Two Kilograms of Methamphetamine**

Overt Act No. 1:    On February 3, 2024, over text, defendant SOTO sent a photo of multiple firearms to an individual posing as a firearms customer but who was, in fact, a confidential source working for law enforcement (the "CS").

Overt Act No. 2:    On February 4, 2024, over text, defendant SOTO asked if the CS liked the firearms.  The CS texted back, asking defendant SOTO to confirm that the price was "5 ARs 1300 each right".

Overt Act No. 3:    On February 4, 2024, over a call, defendant SOTO confirmed the price was "thirteen" each for five AR-style rifles; on the same call, defendant SOTO told the CS that the price for "cold ones" was "750" per pound.

Overt Act No. 4:    On February 5, 2024, over a series of calls using coded language, defendant SOTO offered to sell the CS five AR-style firearms, and told the CS that he could sell to an individual that he believed to be a drug customer and associate of the CS, but who was actually an undercover law enforcement agent (the "UC"), five pounds of methamphetamine for $750 a pound.

Overt Act No. 5:    On February 6, 2024, over a call using coded language, defendant SOTO asked the CS how much methamphetamine the CS

thought the UC would want to buy in the future, the CS said that he had seen the UC with "30 windows" at a time, and defendant SOTO said, "I got that, I got 200 of them."

Overt Act No. 6:    On February 6, 2024, over a call using coded language, defendant SOTO told the CS that the firearms and methamphetamine were being dropped off with his "holder" and told the CS that the holder was the "guy you're gonna go meet with."

Overt Act No. 7:    On February 7, 2024, over a call, defendant SOTO told the CS that his associates in Los Angeles would have more firearms for sale during the following week and defendant SOTO said his associates "got 30 of 'em" and that "we're running solid on, on guns, stolen cars, drugs, everything."

Overt Act No. 8:    On February 8, 2024, over a series of calls in coded language, defendant SOTO told the CS that he would connect the CS to his associate, "Listo," who was "the one with the chops, the AKs and the pounds."  Defendant SOTO told the CS that Listo would be contacted at phone number (442) 243-6534 (the "-6534 Number").

Overt Act No. 9:    On February 8, 2024, defendant MEDINA answered the 6534 Number and told the CS in coded language that "Pee" had told him about the order "days ago" and that the five pounds of methamphetamine were "on their way."  In the same call, defendant MEDINA said that firearms "come in all day" and that he could get "fullies" and "Glocks fullies."

Overt Act No. 10:    On February 8, 2024, over a call in coded language, defendant MEDINA confirmed that he had five pounds of methamphetamine and three firearms, and that he was trying to obtain the other two firearms for the sale.

4

Overt Act No. 11:   On February 8, 2024, over a call in coded language, defendant SOTO said that defendant MEDINA worked for a "big homie directly," that "a thousand dollars is going to him" for couriering the deal, and, with respect to the remaining two firearms, that "we can't be holding this shit for three, four days in a house bro . . . everyone's houses get hit, like these are gang member houses."

Overt Act No. 12:   On February 8, 2025, defendant MEDINA sold the CS and the UC three privately manufactured, AR-style firearms and approximately 2.083 kilograms of methamphetamine for $7,600.

**February 21, 2024: SOTO and MEDINA Attempt to Sell Five Firearms and Five Pounds of Methamphetamine**

Overt Act No. 13:   On February 13, 2024, over a FaceTime call, defendant MEDINA told the CS that he would get a list of available firearms and their prices, confirmed that he could get "individual switches," and said, "we're" going to come into possession of "the attachment" to install in an "AR" to make "those fully."

Overt Act No. 14:   On February 18, 2024, over a text, defendant SOTO confirmed he had firearms and methamphetamine available for purchase.

Overt Act No. 15:   On February 20, 2024, over a call in coded language, defendant SOTO confirmed to the CS that defendant MEDINA would be the courier for the drug and firearm transaction for February 21, 2024.

Overt Act No. 16:   On February 21, 2024, over a call in coded language, defendant SOTO told the CS that his source or sources

5

wanted payment upfront, and he did not have money in the United States to pay them because he had "just bought like seven cars."

Overt Act No. 17:   On February 28, 2024, over a call with the UC discussing the failed transaction on February 21, 2024, defendant MEDINA said that, "the last time, Pee paid for 'em, he gave me the money, I grabbed 'em"; then he said, "they got 20 of the windows coming in right now" and "I got three of those little mini ones," which he clarified meant "AR pistols."

**March 21, 2024: SOTO and LOPEZ Sell Three Firearms**

Overt Act No. 18:   On March 20, 2024, over a series of FaceTime calls and text messages, defendant SOTO told the CS that he had an "AK" with a folding stock, a "Glock 45," and a "1911 CZ" for sale in Los Angeles for $3,800, and arranged the deal for March 21, 2024, and texted the CS a meeting location.

Overt Act No. 19:   On March 21, 2024, over a FaceTime call between the UC and defendants SOTO and LOPEZ, defendant SOTO called defendant LOPEZ by the name "Joey," and said that defendant LOPEZ would be meeting the UC for the firearms deal.

Overt Act No. 20:   On March 21, 2024, over text, defendant SOTO sent the UC the agreed-upon meeting location for the firearms deal later that day.

Overt Act No. 21:   On March 21, 2024, defendant LOPEZ met the UC at the agreed-upon meeting location and sold the UC three firearms for $3,800, namely, a Glock, model 21, .45 caliber semi-automatic pistol; a CZ, model CZ97, .45 caliber semi-automatic pistol, and an AK-style, 7.62 caliber rifle.

**April 3, 2024: SOTO, LOPEZ, and MEDINA Attempt to Sell Five Firearms and Five Pounds of Methamphetamine**

Overt Act No. 22:   On April 1, 2024, over a series of FaceTime calls, defendant SOTO offered to sell the CS five AR-style firearms for $1,300 each and five pounds of methamphetamine for $10,250 on April 3, 2024, through defendant LOPEZ.

Overt Act No. 23:   On April 3, 2024, in a series of FaceTime calls, defendant SOTO proposed having defendant MEDINA conduct the transaction instead of defendant LOPEZ.   Defendant SOTO also said that he only works with "Listo" and "Joey," and that both were "under" defendant SOTO.

**April 16, 2024: SOTO and LOPEZ Sell Two Firearms and 1.5 Kilograms of Methamphetamine**

Overt Act No. 24:   On April 14, 2024, over a FaceTime call in coded language, defendant SOTO offered to sell the UC five pounds of methamphetamine and two firearms for $6,350 through defendant LOPEZ.

Overt Act No. 25:   On April 14, 2024, defendant SOTO and the UC spoke on a FaceTime call and arranged the deal for April 16, 2024.

Overt Act No. 26:   On April 15, 2024, defendant LOPEZ texted the UC a location for the agreed upon firearms and methamphetamine sale.

Overt Act No. 27:   On April 16, 2024, defendant LOPEZ met the UC at the pre-arranged meeting location and sold the UC approximately 1.64 kilograms of methamphetamine and two firearms for $6,360.

**October 7, 2024: SOTO, MEDINA, LOPEZ, and COUSINS Sell Six Firearms and Attempt to Sell Five Pounds of Methamphetamine**

Overt Act No. 28:   On September 30, 2024, over a FaceTime call using coded language, defendant SOTO offered to sell the UC AR-style firearms for $1,300 each.

Overt Act No. 29:   On October 3, 2024, defendant SOTO texted the UC a telephone number (850) 445-6499 (the "-6499 Number") that defendant SOTO identified as the telephone number for his associate who would be conducting the firearms transaction.

Overt Act No. 30:   On October 3, 2024, over a call, defendant SOTO said that "Listo took the money" and "they'll be coming back… tonight" with the firearms.

Overt Act No. 31:   On October 5, 2024, over a call, defendant SOTO told the UC that the firearms were "ready for pick up" and were "at Listo's crib."  During that call, defendant SOTO arranged the firearms and methamphetamine deal for October 7, 2024.

Overt Act No. 32:   On October 6, 2024, over a text, defendant SOTO told the UC that he "had Joey pick them up last night cuz my bros house was hot."

Overt Act No. 33:   On October 7, 2024, defendant SOTO texted the UC an address on Figueroa Street in Los Angeles as the "meet up spot" for the firearms sale.

Overt Act No. 34:   On October 7, 2024, defendant COUSINS texted the UC from the 6499 Number the same Figueroa Street address that defendant SOTO had texted the UC and suggested meeting a block away.

Overt Act No. 35:   On October 7, 2024, at the agreed upon meeting location near Figueroa Street, defendant COUSINS sold the UC

8

six firearms, including two privately manufactured firearms, commonly known as "ghost guns," and 84 rounds of ammunition.

Overt Act No. 36:   On October 7, 2024, during the deal with the UC, defendant COUSINS called defendant SOTO via FaceTime and defendant SOTO told defendant COUSINS that the price for the six firearms was "78."  Defendant SOTO also told the CS that the methamphetamine would be ready for pick-up later that day.

**November 7, 2024: SOTO and COUSINS Sell Five Firearms and Attempt to Sell Five Pounds of Methamphetamine**

Overt Act No. 37:   On October 8, 2024, over a FaceTime call, defendant SOTO told the UC that "Listo sold out" of methamphetamine but offered to sell the UC ten "windows" and "ten of those toys."

Overt Act No. 38:   On November 4, 2024, defendant SOTO texted the UC that he "got 5 ars tomorrow" and, in coded language, offered to sell the firearms to the UC.

Overt Act No. 39:   On November 5, 2024, over text messages, defendant SOTO told the UC that he needed to sell the firearms quickly because the firearms supplier was "from AZ" and "they wanna go home."  Defendant SOTO also said, "I have a few other people who buy them."

Overt Act No. 40:   On November 5, 2024, over text messages, defendant SOTO told the UC that he would try to hold the firearms and sell them to the UC on November 7, 2024.  He also texted that he was "trying to send Joey to go pick them up Preston doesn't want to lol."

Overt Act No. 41:   On November 6, 2024, over text messages, defendant SOTO said that the firearms were "with Joey rn but I'll make sure he picks it up later today," referring to COUSINS.

Overt Act No. 42:   On November 6, 2024, on a Facetime call in coded language, defendant SOTO told the UC that he would sell the firearms for $1,300 each but that he only had four firearms to sell because he had given defendant LOPEZ one of the firearms; defendant SOTO also said that he was working on getting methamphetamine for the UC.

Overt Act No. 43:   On November 7, 2024, by text message, defendant COUSINS confirmed with the UC the location for the firearms deal.

Overt Act No. 44:   On November 7, 2024, over a FaceTime call, defendant SOTO asked the UC "if there is anyway we can run the 4 first" because he was waiting on the five "parts" and would drop off the "windows" at a later time.

Overt Act No. 45:   On November 7, 2024, the UC met defendant COUSINS at the agreed-upon meeting location and bought four ghost gun firearms for $5,200 total.

**January 10, 2025: SOTO and COUSINS Sell Four Firearms and Attempt to Sell Five Pounds of Methamphetamine**

Overt Act No. 46:   On November 21, 2024, in a FaceTime call using coded language, defendant SOTO offered to sell the UC five to ten firearms and five pounds of methamphetamine.

Overt Act No. 47:   On January 8, 2025, in text messages using coded language, defendant SOTO and the UC arranged for the firearms sale to occur on January 10, 2025.

Overt Act No. 48:   On January 10, 2025, defendant COUSINS asked the UC if they would meet at the "same spot" in response to a text message from the UC about the agreed-upon firearms transaction.

Overt Act No. 49:   On January 10, 2025, over text message, defendant COUSINS told the UC that he was "still waiting on the windows, its otw to me rn."

Overt Act No. 50:   On January 10, 2025, defendant COUSINS sold the UC four firearms and three AR-style upper receivers for $5,200 total.



Overt Act No. 51:   On January 10, 2025, during the firearms deal, defendant SOTO called defendant COUSINS and told defendant COUSINS that defendant SOTO was still waiting on the methamphetamine.

COUNT TWO

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A.    OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, but no later than on or about February 3, 2024, and continuing until at least on or about January 10, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants PHILIP JESUS SOTO JR., also known as ("aka") "Tee," "Pee," and "El Jefe," JOSEPH ANTHONY MEDINA, aka "Listo," JOEY LOPEZ, and PRESTON O'NEIL COUSINS, and others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii).

B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.    Defendant SOTO would negotiate with drug customers to sell firearms and methamphetamine and would arrange for defendants MEDINA, LOPEZ, and COUSINS to pick up and deliver the firearms and methamphetamine to firearm and drug customers.

2.    At the direction of defendant SOTO, defendants MEDINA, LOPEZ, and COUSINS would meet with firearm and drug customers at a pre-arranged meeting location to deliver the drugs and firearms and to collect the customer's cash.

12

C.   OVERT ACTS

On or about various dates, in furtherance of the conspiracy, and to accomplish the objects of the conspiracy, defendants, and others known and unknown to the Grand Jury, within the Central District of California, committed various overt acts, including the overt acts numbered 1 through 51 as set forth in Count One and incorporated by reference here, on or about the dates specified therein.

COUNT THREE

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS MEDINA AND SOTO]

On or about February 8, 2024, in Los Angeles County, within the Central District of California, defendants JOSEPH DANIEL MEDINA, also known as ("aka") "Listo," and PHILIP JESUS SOTO JR., aka "Tee," "Pee," and "El Jefe," each aiding and abetting the other, knowingly and intentionally distributed at least 50 grams, that is, approximately 2.083 kilograms, of methamphetamine, a Schedule II controlled substance.

14

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS LOPEZ AND SOTO]

On or about April 16, 2024, in Los Angeles County, within the Central District of California, defendants JOEY LOPEZ and PHILIP JESUS SOTO JR., also known as "Tee," "Pee," and "El Jefe," each aiding and abetting the other, knowingly and intentionally distributed at least 50 grams, that is, approximately 1.64 kilograms, of methamphetamine, a Schedule II controlled substance.

15

COUNT FIVE

[18 U.S.C. § 922(g)(1)]

[DEFENDANT MEDINA]

On or about February 8, 2024, in Los Angeles County, within the Central District of California, defendant JOSEPH DANIEL MEDINA, also known as "Listo," knowingly possessed ten rounds of .223 Remington caliber ammunition, in and affecting interstate and foreign commerce. Defendant MEDINA possessed such ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

1.    Assault with a Deadly Weapon with Force: Possible Great Bodily Injury, in violation of California Penal Code Section 245(a)(4), in the Superior Court of the State of California, County of San Bernardino, Case No. FWV19002875, on or about December 16, 2019; and

2.    Possession of a Controlled Substance While Armed, in violation of California Health and Safety Code Section 11370.1(a), in the Superior Court of the State of California, County of Los Angeles, Case No. CITKA129428, on or about August 10, 2022.

16

COUNT SIX

[18 U.S.C. § 922(a)(1)(A); 18 U.S.C. § 2(a)]

[DEFENDANT COUSINS]

Beginning on an unknown date, but no later than on or about October 7, 2024, and continuing until at least on or about January 10, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants PRESTON O'NEIL COUSINS and PHILIP JESUS SOTO JR., also known as "Tee," "Pee," and "El Jefe," not being licensed as importers, manufacturers, or dealers of firearms, each aiding and abetting the other, willfully engaged in the business of dealing in firearms, specifically, the sales of the following firearms, on or about the following dates:

| DATE | FIREARM(S) |
| --- | --- |
| 10/07/2024 | A Palmetto State Armory PA-15, AR-style rifle, 5.56 NATO caliber, bearing serial number SCB997271 |
| | An Anderson Manufacturing AM-15, AR-style pistol, 5.56 NATO caliber, bearing serial number 20104415 |
| | A privately manufactured, AR-style pistol, 5.56 NATO caliber |
| | A privately manufactured, AR-style rifle, 5.56 NATO caliber |
| | An Aero Precision M4E1, AR-style pistol, 5.56 NATO caliber, bearing serial number M4-0254467 |
| | A Diamondback Firearms DB15, AR-style rifle, 5.56 NATO caliber, bearing serial number DB2940873 |
| 11/07/2024 | A privately manufactured, AR-style pistol, 5.56 NATO caliber |
| | A privately manufactured, AR-style pistol, 2.23 caliber |
| | A privately manufactured, AR-style pistol, 5.56 NATO caliber |

17

| DATE | FIREARM(S) |
|---|---|
|  | A privately manufactured, AR-style pistol, 5.56 NATO caliber |
| 01/10/2025 | A Ruger AR-556, AR-style lower receiver, 5.56 NATO caliber, bearing serial number 855-14066 |
|  | A Live Free Armory LF-10, AR-style lower receiver, multi-caliber, bearing serial number F00610 |
|  | A Professional Ordnance Inc. CARBON-15, AR-style lower receiver, 5.56 NATO caliber, bearing serial number C01350 |
|  | A Radical Firearms, LLC RF-15, AR-style lower receiver, multi-caliber, bearing serial number 24-057492 |

COUNT SEVEN

[18 U.S.C. § 5861(d)]

[DEFENDANT COUSINS]

On or about October 7, 2024, in Los Angeles County, within the Central District of California, defendant PRESTON O'NEIL COUSINS possessed a firearm, namely, a privately manufactured, AR-style, 5.56 NATO caliber rifle, bearing no serial number, with a barrel less than 16 inches in length, which defendant COUSINS knew to be a firearm and a short-barreled rifle, as defined in Title 26, United States Code, Sections 5845(a)(3) and 5845(c), and which had not been registered to defendant COUSINS in the National Firearms Registration and Transfer Record, as required by Title 26, United States Code, Chapter 53.

COUNT EIGHT

[26 U.S.C. § 5861(i)]

[DEFENDANT COUSINS]

On or about October 7, 2024, in Los Angeles County, within the Central District of California, defendant COUSINS knowingly possessed a firearm, namely, a privately manufactured, AR-style, 5.56 NATO caliber rifle, bearing no serial number, with a barrel less than 16 inches in length, which defendant COUSINS knew to be a firearm, as defined in Title 26, United States Code, Section 5845(a)(7), and Title 18, United States Code, Section 921(a)(24), and which did not bear a serial number or other information required by Title 26, United States Code, Section 5842.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)  all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

21

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 853]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, in the event of any defendant's conviction of the offenses set forth in Counts Two through Four of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b)  All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in

22

value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in either of Counts Five or Six of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

24

FORFEITURE ALLEGATION FOUR

[26 U.S.C. § 5872, and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, Section 5872 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in either of Counts Seven or Eight of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any firearm involved in any such offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

25

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

TODD BLACHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

FRANCES S. LEWIS
Assistant United States Attorney
Chief, General Crimes Section

SHAWN T. ANDREWS
Assistant United States Attorney
Deputy Chief, General Crimes
Section

KELSEY A. STIMSON
Assistant United States Attorney
Major Crimes Section

26